IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

INTERNATIONAL LONGSHOREMEN'S      *
ASSOCIATION, AFL-CIO,      *
LOCAL 1984,      *
         *
     Plaintiff,      *
         *
vs.      * CIVIL ACTION NO. 14-00589-B
         *
ALABAMA STATE PORT AUTHORITY,      *
         *
     Defendant.      *

## ORDER

This matter is before the Court on Defendant Alabama State Port Authority's Motion for Summary Judgment and supporting brief (Docs. 15, 16), Plaintiff International Longshoremen's Association, Local 1984's Response in Opposition (Doc. 18), and Defendant's Reply (Doc. 19). Upon careful review of the motion, briefs, supporting materials and the applicable case law, the Court concludes that no material facts are in controversy, and that Defendant is entitled to judgment as a matter of law. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I.   Undisputed Material Facts

The Alabama State Port Authority (hereafter "ASPA" or "Defendant") is a state agency which operates port facilities, including the Terminal Railway in Mobile, Alabama. (Doc. 1 at ¶5). Plaintiff International Longshoremen's Association, Local

1984 (hereinafter "Plaintiff" or "Union") is a labor organization representing certain hourly employees at the ASPA Terminal Railway in Mobile. (Id. at ¶ 4). ASPA is a "carrier" subject to the provisions of the Railway Labor Act. (Doc. 16 at 2; Doc. 17 at 1); See Diamond v. Terminal Ry. Alabama State Docks, 421 F.2d 228, 230 (5ᵗʰ Cir. 1970). On December 21, 2010, the parties entered into a Collective Bargaining Agreement ("CBA") (Doc. 1 at ¶ 13). The parties, on May 15, 2013, entered into an agreement to establish a Public Law Board (hereinafter "Board" or "PLB") under Section 3 of the Railway Labor Act. (Id. at ¶ 6). The agreement included nine cases, titled Case 1 to Case 9. (Doc. 16 at 2). "The agreement also provided that the Board would consist of a representative of the Union, ASPA, and a neutral arbitrator and that an award on each case required two votes of the three members. The parties submitted this agreement to the National Mediation Board (hereinafter ["Mediation Board"]) along with a request for an arbitrator strike list." (Doc. 1 at ¶6). The parties agreed on the neutral arbitrator to serve on the Board, and the Mediation Board approved their requests on January 16, 2014. (Id.). The Board met on February 27, 2014, and unanimously agreed to deny case 9. (Id. at ¶ 7). The parties could not agree on a resolution for the other cases. (Id.). The Board issued final arbitration

awards denying or dismissing all claims except Case 8.[1] (Doc. 16 at 3, 5, 7, 9, 11, 13). The Union initiated this action seeking judicial review of Awards 1-8, but later, voluntarily dismissed Counts 2 and 8 of the Petition. (Docs. 13, 14).  Therefore, the only awards at issue in the present action are Awards 1, 3, 4, 5, 6, and 7. Defendant's motion seeking dismissal of this action has been fully briefed and is ripe for resolution.

## II.  Discussion

### a. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'" (citation omitted)(emphasis in original)).

The party asking for summary judgment "always bears the initial responsibility of informing the district

---

[1] The Union's representative signed all the awards, but noted dissention on Awards 1, 3, and 4. (Doc. 1 at  ¶ 7).

court of the basis for its motion, and identifying
those portions of the 'pleadings, depositions, answers
to interrogatories, and admissions on file, together
with the affidavits, if any,' which it believes
demonstrate the absence of a genuine issue of material
fact." The movant can meet this burden by presenting
evidence showing there is no dispute of material fact,
or by showing, or pointing out to, the district court
that the nonmoving party has failed to present
evidence in support of some element of its case on
which it bears the ultimate burden of proof.

Once the moving party has met its burden, Rule 56(e)
"requires the nonmoving party to go beyond the
pleadings and by its own affidavits, or by the
'depositions, answers to interrogatories, and
admissions on file,' designate 'specific facts showing
that there is a genuine issue for trial.'" To avoid
summary judgment, the nonmoving party "must do more
than show that there is some metaphysical doubt as to
the material facts." On the other hand, the evidence
of the nonmovant must be believed and all justifiable
inferences must be drawn in its favor.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F.
Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013)(citations
omitted).

**b. Standard of Review for a Board Award Issued Under the Railway Labor Act.**

As a carrier operating in interstate commerce, ASPA must
comply with the provisions of the Railway Labor Act, 45 U.S.C.
§§ 151-188 ("RLA"). Loveless v. Eastern Air Lines, Inc., 681 F.
2d 1272, 1275 (llth Cir. 1982). Congress enacted the RLA to
avoid labor-based interruptions to commerce or to the operation
of the railway and airline industries. Stewart v. Spirit
Airlines, 503 Fed. Appx. 814, 817 (llth Cir. 2013). The RLA

4

requires every carrier and its employees to establish a board to deal with grievances arising out of the carrier-employee relationship. In this case, the Public Board fulfills this role.

Under the RLA, a court may overturn a Board's award only if one of three circumstances exists: (1) the Board has failed to comply with the requirements of the RLA; (2) the Board's order does not conform, of confine itself, to matters within the scope of the Board's jurisdiction; or (3) a member of the Board has engaged in fraud or corruption. <u>Henry v. Delta Air Lines</u>, 759 F. 2d 870, 872 (11th Cir. 1985). This scope of review has been described as "among the narrowest known to the law," <u>id.</u> (quoting <u>Diamond</u>, 421 F.2d at 233), and a court may neither review the substance of such an award for ordinary error nor vacate an award because a judge might have reached a different result. <u>Loveless</u>, 681 F. 2d at 1276. (citations omitted). Instead, substantive grounds for vacating an award where the Board's order does not "conform, or confine itself, to matters within the scope of the [Board's] jurisdiction" exist only in the following three situations: (1) the award is "irrational", meaning "wholly baseless and completely without reason," <u>Loveless</u>, 681 F.2d at 1276 (citations omitted); (2) the award has no "rationally inferable" basis form the "letter or purpose of the collective bargaining agreement," <u>id.</u> (citations

omitted); (3) the arbitrator failed to conform to a specific contractual limitation upon his authority, id. (citations omitted); see also Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. Of Adjustment CSX Transp. N. Lines, 455 F. 3d 1313, 1315-16 (11th Cir. 2006)(citation omitted).

Under the RLA, the range of judicial review in enforcement cases is among "the narrowest known to the law." Diamond, 421 F.2d at 232. Judicial review of orders is limited to only three very specific grounds: (1) failure of the Board to comply with the Act, (2) fraud or corruption, or (3) failure of the order to conform, or confine itself, to matters within the Board's jurisdiction. Railway Labor Act § 3, 15 U.S.C. § 153 First (p) (1964), as amended (Supp. IV, 1968). Only upon one or more of those grounds may a court set aside an order of the Adjustment Board. Diamond, 421 F.2d at 233. In the arbitration context, an award "without foundation in reason or fact" is equated with an award that exceeds the authority or jurisdiction of the arbitration body. Diamond, 421 F.2d at 233 (citing Brotherhood of Railroad Trainmen v. Central of Ga. Ry. Co., 415 F.2d 403, 411-412 (5th Cir. 1969)). The test of the Board's jurisdiction is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a

logically means of furthering the aims of that contract. <u>Diamond</u>, 421 F.3d at 233 (citing <u>Brotherhood</u>, 415 F.2d at 412).

### c. Analysis

#### 1. Award 1

Award 1 involves the Union's grievance concerning barge-cleaning duties at ASPA's McDuffie Terminal. (Doc. 16 at 6). According to the Union, under Article 1 §§ 1 of the parties' CBA, "the Port Authority recognized Local 1984 as the exclusive collective bargaining representative of all hourly paid production and maintenance employees who are employed at all public Port facilities operated by the Port Authority, excluding salaried merit system and terminal railroad employees." (Doc. 1 at 5-6). The Union contends that ASPA's sub-contracting of the barge cleaning duties at the McDuffie Terminal violated the exclusivity provisions of the parties' CBA. (<u>Id</u>.). In support of its argument that the cleaning duties constituted bargaining unit work covered under the parties' agreement, the Union notes that ASPA conceded the existence of a long-standing policy whereby bargaining unit employees performed said duties. (<u>Id</u>.) The Union further contends that the Board's decision denying the Union's claim has no foundation in reason or fact, and impermissibly expands the CBA beyond its agreed upon terms, as the Board acknowledged that there is an established practice of using bargaining unit employees members for cleaning in

conjunction with the unloading and loading of coal. (Id.). ASPA argues that the Union's disagreement with the Board's decision is not a sufficient basis for vacating the award. (Doc. 16 at 6). According to ASPA, the Board provided a detailed lengthy analysis that was grounded in reason and fact. (Id. at 7). ASPA asserts that the Board properly found that the Union's existing practice of cleaning out unloaded barges at one location that pose[d] little in way of safety hazards" was completely different from sweeping decks on loaded barges at a hazardous location. (Id.).

In this case, the Board expressly considered the CBA provisions relied upon by the parties, and determined that neither the exclusivity provision nor the management provision addressed the specific issue before the Board. (Doc. 15-3). The Board found that at one time, bargaining unit employees performed the cleaning duties on vessels that had been unloaded as well as the vessels that had been loaded; that the Coast Guard began enforcing a regulation that provided that loaded barges have no more than one gallon of coal dust on their decks; that this resulted in the cleaning work on the loaded barges being performed in an area exposed to tides and currents and wave action; that this change in work environment created a safety hazard for ASPA employees, thus, ASPA began contracting with barge owners to perform the work; that the Union did not

voice any objection until the work was subcontracted out; and that the two bargaining unit employees who had once performed the cleaning work at issue suffered no loss in pay. (Id.).

Upon review, the Court finds that the Board's ruling was not "wholly baseless and completely without reason". Indeed, it is well settled that an arbitrator can review the parties' past practice, usage and custom in interpreting their CBA. Consolidated Rail Corp. v. Rx Labor Executives' Assn., 491 U.S. 299, 311, 109 S. Ct. 2477, 2485, 105 L. Ed. 2d 250 (1989). This is exactly what the Board did in this case. The Board found that a practice that developed in response to one circumstance does not automatically extend to a different set of circumstances. (Doc. 15-3). Specifically, the Board concluded that the situation under which the cleaning of the loaded barges occurred was clearly far more hazardous than the circumstances under which the unloaded barges were cleaned. (Id.). The Board also determined that the outsourcing of the hazardous work did not negatively impact bargaining unit employees as they continued to receive pay. (Id.). Regardless of whether the Union agrees with the Board's decision, it has failed to proffer facts that suggest that the decision was "wholly baseless and completely without reason." See Loveless, 681 F.2d at 1276 ("[C]ourts will not vacate an award because a judge might have reached a different result."). Thus, the award will not be vacated.

9

### 2. Award 3

In Award 3, the Board determined that the CBA was not violated when the Carrier allowed an employee (who had retained the classification of Coal Machine Operator (CMO) but had been working in the Equipment Operator (EO) position as an accommodation) to perform overtime work, as the Carrier had attempted to assign overtime to other employees in the EO classification but no employees were available. (Doc. 15-5). The Union argues that in issuing this award, the Board failed to conform or confine itself to matters within the scope of its jurisdiction, as the Board relied on an extemporaneous agreement between the ASPA and one of its employees, not the clear, unambiguous terms of the CBA.  (Doc. 1 at 8-9). ASPA counters that the Board's decision did not exceed it's jurisdiction, and even if the Board made a factual error or failed to credit some information, that would not be reason to consider the award in excess of their jurisdiction. (Doc. 16 at 9-10). They further argue that the Union's contention that the award failed to rely on the CBA is clearly contradicted by the award itself. (Id.).

Notwithstanding the Union's assertions to the contrary, the Board did not exceed its jurisdiction in resolving this claim. The Board expressly found that pursuant to Article 18, Section 8 of the parties' CBA, ASPA was required to offer EO overtime within the EO overtime classification; however, on the day in

question, ASPA attempted to follow the overtime distribution
priority rules but no employee holding the EO classification was
available. (Doc. 15-5 at 3). Thus, ASPA utilized an employee
with a special work accommodation to perform the EO overtime as
it was the work that he normally performs on his regular shift.
(Id.). As noted by ASPA, the fact that the Union takes issue
with the Board's factual finding that no other EO employees were
available is of no moment. It is not this Court's role to
second-guess. Further, a review of the reward at issue clearly
shows that the Board interpreted a specific portion of the
parties' CBA in resolving this claim. Thus, it did not exceed
its jurisdiction.

### 3. Award 4

In Award 4, the Board determined that the CBA was not
violated when two employees were permitted to work a 8 hour
overtime shift performing preventive maintenance on conveyor
belts during the weekend of February 11-12, 2012, though the
claimant had requested and been denied the same opportunity.
(Doc. 15-7). The Union argues that the Board's award was wholly
baseless and completely without reason and that the Board
completely ignored the clear and unambiguous provisions of CBA,
particularly, Article 20, Section 1 of the CBA, which provides
that "[w]hen required in case of emergency, an 8 hour shift may
be started at any time." (Doc. 1 at 10-11). The Union contends

that the Board ignored this language as the claimant properly requested to be allowed to work an 8-hour overtime shift, instead of the required 10, and his request was denied while two other employees were permitted to leave work after 8 hours of the overtime work. (Id.). ASPA argues that under the RLA, the Board's interpretation controls; thus, the Union has not presented a valid ground for vacating the award. (Doc. 16 at 10-11).

In denying Award 4, the Board noted that it was unrefuted that the Carrier had an approximately 40-year practice of scheduling longer shifts to perform maintenance under similar circumstances, and that Article 20 Section 1 of the parties CBA permitted an increase in shift hours from 8 to 10 not just for emergencies, but also in order to accommodate operational and maintenance requirements. (Doc. 15-7). The Board further found that the claimant disqualified himself from performing the overtime work, and that the two comparators who were permitted to leave after 8 hours were actually working on a different maintenance project and had more seniority than the claimant. The undersigned finds that the Board did not exceed its authority in interpreting the contract provision, and its rationale was not wholly without reason. Accordingly, the Union has not presented a valid ground for vacating the award.

### 4. Award 5

Award 5 involved the Union's assertion that during a safety meeting, a management employee spoke to a shop steward in a disrespectful manner after the shop steward, who was attending the meeting as a member of the work crew, questioned whether the supervisor's statements regarding the notice required before absences complied with the parties' CBA. (Doc. 1 at 11-12). Following the meeting, the shop steward wrote a letter to Human Resources complaining about the supervisor's behavior. (Doc. 1-13). Nearly two months later, the shop steward filed a written grievance form. (Doc. 1-14). The shop steward classified his grievance as a "step 2" grievance, and asserted that he had not received any response to his formal harassment complaint filed with Human Resources. (Id.). Subsequent thereto, the shop steward filed two additional written grievance forms, and he classified them as "step 3" and "step 4" grievance. (Docs. 1-15, 1-16).

The parties submitted the following statement of claim to the Board:

"Union member Brandon Harris alleged discrimination against union officials and harassment."

The Board determined that it had jurisdiction over the dispute, and "[a]fter review of the submissions", concluded that "no issues remain in this dispute that require resolution by the

Board." (Doc. 15-9 at 2).  Therefore, the Board dismissed the claim. (Id.)

The Union contends that the arbitrator did more than just interpret the parties' agreement, "he flat out went rouge in suggesting that there was not a valid grievance." (Doc. 18 at 8).  According to the Union, in the parties' CBA, at Article 3, § 2, the parties set a pretty low standard with respect to defining what constitutes a grievance. (Id.).  As a result, the Board's determination that there was no grievance is "inconceivable" under the CBA. (Id.).

The clear gist of the Union's argument is that in concluding that there were no issues to resolve, the Board implicitly found that there was no valid grievance under the CBA, and this finding is wrong.  The Court finds that, assuming _arguendo_ that the Union is correct in its assertion that the Board did not properly construe the shop steward's letter as a grievance under Article 3 § 2, that does not provide a basis for setting aside the award.  The law is firmly established that courts must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong the Court believes it to be.  Wiregrass Metal Trades Council AFL-CIO v. Shaw Environmental & Infrastructure, Inc., 2016 U.S. App. LEXIS 16535 (11th Cir. 2016).  Indeed, the Supreme Court has explained that "[b]ecause the parties bargained for the arbitrator's

14

construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)meits." Oxford Health Plans LLC v. Sutter, 569 U.S. --- , 133 S. Ct. 2064, 2068, 186 L. Ed. 2d 113 (2013)(quotation marks omitted). Thus, "the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Id. at 2068.  If the Court determines that "the arbitrator (even arguably) interpreted the parties' contract", the Court must end its inquiry and deny a motion for vacatur.  S. Commc'ns Servs., Inc. v. Thomas, 720 F. 3d 1352, 1359 (11th Cir. 2013).

In this case, it is undisputed that the shop steward initially wrote a letter to Human Resources complaining about the alleged disrespectful treatment he received during a safety meeting.  He did not contend that any tangible action had been taken against him nor did he request any specific remedy. Nearly two months later, he submitted a formal grievance form complaining that the Company had not responded to his letter. Against this backdrop of facts, the Board considered the Union's challenge, and concluded that "no issues remain in this dispute that require resolution by the Board." (Doc. 15-9).  There is nothing before the Court that suggests that the Board simply ignored the parties' CBA, and this Court cannot second guess the

Board's implicit finding that the shop steward's letter did not rise to the level of a grievance under the CBA. Thus, the award is due to be upheld.

### 5. Awards 6 and 7

Award 6 involved a challenge by the Union alleging unjust discipline based on "counseling" issued to employees for purportedly failing to timely notify the company of absences. (Doc. 15-11). Award 7 involved a discipline in the form of counseling and a letter that was placed in the personnel file of employee Tracy Higgins, who at the request of the Port police chief, entered a confined space in violation of the Company's confined space entry program and OSHA training. (Doc. 1 at 15). In its award, the Board noted that the parties agreed that letters of counseling do not constitute discipline, and the Board urged the carrier and the union to make clear to all supervisors of hourly employees and all hourly employees represented by the Union that counseling is not to be considered discipline and will not be considered as part of progressive discipline at the Port. (Doc. 15-11 at 3). The Board then concluded that the claim was resolved in accordance with the finding. (Id.).

Plaintiff argues that Award 6 only partially resolved one dispute, but did not address the removal of the counseling letters from employees' files, and that ASPA did not

unilaterally agree to do so. (Doc. 1 at 14). The Union contends that this fails to comply with the requirements of the RLA and that the Board failed to confine itself to matters within its jurisdiction; thus, the award should be remanded to the Board for further consideration. (Doc. 1 at 14-15). In Award 7, the Board dismissed Case 7 on the basis that Case 6 had addressed the underlying issue present in both cases by stating counseling is not considered discipline. (Doc. 15-13). Plaintiff asserts that the board failed to address the Union's requested remedy in Case 7; therefore, the Board failed to conform or confine itself to matters within the scope of the Board's jurisdiction in violation of the RLA. (Doc. 1 at 15-16). Defendant counters that both parties agreed that letters of counseling do not constitute discipline under well-settled labor law, and the Board found that the claims were therefore resolved by agreement. (Doc. 16 at 12). According to Defendant, the Board was not required to expressly address each argument of the Union, or, indeed, give any reason for an award at all. (Doc. 16 at 12-13).

Generally, arbitrators are not required to include explanations, much less detailed ones, and they often do not. Wiregrass, 2016 U.S. App. LEXIS 16535 at *13 (quoting United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Works Int'l Union AFL-CIO-CLC v. Wise Alloys, LLC., 807 F. 3d 1258, 1275 (11th Cir. 2015))("Unless the parties stipulate

otherwise. . .an arbitrator is under no obligation to provide explanations with his award."); Cat Charter, LLC v. Schurtenberger, 646 F. 3d 836, 844 (llth Cir. 2011)("Generally, an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a result.")). As observed by the Court in Wiregrass:

> "[W]hen it is "not apparent" from the arbitrator's stated reasoning (or lack thereof) whether [he] permissibly interpreted a collective bargaining agreement or impermissibly modified it, and one can plausibly read the award either way, the court must resolve the ambiguity by finding that the award is an interpretation of the contract and enforcing it. The rule reflects a strong, albeit not irrebuttable, presumption that the arbitrator has interpreted the agreement instead of modifying it."

Wiregrass, 2016 U.S. App. LEXIS 16535 at *17.  The Court in Wiregrass noted that if the arbitrator in that labor arbitration case had issued a standard award, simply announcing a result without explanation, there would not have been any grounds for vacating the award, and that the fact that the arbitrator provided an incomplete explanation for the award, instead of none at all, should not be a basis for vacating an award because it would discourage "arbitrators from saying anything beyond who won and how much". Wiregrass, 2016 U.S. App. LEXIS 16535 at *19.

The Union's challenge to Awards 6 and 7 is essentially that the Board provided an incomplete award, and left unresolved some

issues. Given the undisputed evidence that the Board (along with the parties) found that the letters of counseling do not constitute discipline, and that the Board concluded that all issues were resolved, one can rationally interpret the Board's decision to include an implicit finding that ASPA did not violate the CBA.  Thus, the Board award must be upheld.

### III. Conclusion

Having reviewed the record and the parties' arguments at length, the Court finds that none of the criteria to trigger judicial review under the Railway Labor Act § 3 First (p), 45 U.S.C. § 153 have been met. Accordingly, the undersigned finds the Motion for Summary Judgment is due to be **GRANTED**, and this action **dismissed with prejudice.**

ORDERED this **6**th day of **October, 2016.**

_____
      **/s/ Sonja F. Bivins**
**UNITED STATES MAGISTRATE JUDGE**